6193463 (SBB)          SBB:gpm          6/27/08          WHITE          17662-9-71

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE CHESLER and<br>JAQUELINE CHESLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08 CV 2679 |
| | ) | |
| RICHARD M. CONROY, ANA CONROY, | ) | **Judge:** Virginia M. Kendall |
| FRANCIS C. ANSEL, III and 1327 DEARBORN) | | **Magistrate:**   Jeffrey Cole |
| CONDOMINIUM ASSOCIATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS

On May 9, 2008, plaintiffs Lawrence Chesler and Jacqueline Chesler (referred to sometimes as "plaintiffs" or the "Cheslers") filed a thirty-six page, eight count Complaint against RICHARD M. CONROY ("MR. CONROY"), ANA CONROY ("MS. CONROY") (referred to sometimes collectively as the "CONROYS"), FRANCIS C. ANSEL, III ("MR. ANSEL"), and 1327 DEARBORN CONDOMINIUM ASSOCIATION, INC. (the "ASSOCIATION") (collectively "defendants"). Plaintiffs own the third-floor unit in a three-unit building at 1327 North Dearborn Condominium (the "building"). Complaint at ¶¶ 1-2. The CONROYS own the first-floor unit in the building, and MR. ANSEL was the owner of the second-floor unit during all times relevant to the allegations in the Complaint. *Id*. at ¶¶ 3-5. The ASSOCIATION is a not-for-profit corporation organized to operate the building and of which plaintiffs and the individual defendants are members. *Id*. ¶¶ at 1-6.

Plaintiffs allege a myriad of claims, including violations of the Fair Housing Act (42 U.S.C. § 3601, *et seq.*) (the "FHA"), intentional infliction of emotional distress, assault and battery, negligence, breach of fiduciary duty, and violation of the Illinois Condominium Property Act (765 ILCS 605/1, *et seq.*). *See,* Complaint, *passim.* Specifically, plaintiffs set out a long history of disputes over such issues as custody and control of the ASSOCIATION checkbook, the scheduling of board meetings, the allocation of ASSOCIATION funds for specific improvements around the building, and the maintenance and repair of common elements. *Id.* at ¶¶ 17-76. The Complaint also contains allegations of such acts of "harass[ment] and intimidat[ion]" as the hiding of salt containers, the removal of entryway mats, and the failure to replace burned-out light bulbs, as well as allegations of assault and battery stemming from a quarrel between plaintiff Ms. Chesler and MS. CONROY over the placement of decorative lighting in the front yard. *Id.* at ¶¶ 36(a)-(g); 38-47; Ct. IV ¶¶ 120-132. Plaintiffs also allege that in May of 2006, Mr. Chesler underwent spinal surgery and was placed in a brace rendering him "almost completely immobile" for three months. *Id.* at ¶ 27; Ct. II at ¶ 78. Plaintiffs allege that "[w]hile not currently in a brace, [Mr. Chesler] continues to be limited in mobility" and conclude that "for all intents and purposes under the Fair Housing Act ... [Mr. Chesler] is regarded as being handicapped." *Id.* at ¶ 79. This, plaintiffs claim, brings several years of personal disagreements over the governance of the ASSOCIATION under the purview of the Fair Housing Act. *Id.* at Ct. I and II.

While defendants assert the allegations made by plaintiffs throughout the Complaint are either greatly exaggerated or blatantly false, even if taken as true for purposes of this Motion, these allegations merely amount to a catalogue of complaints levied against the ASSOCIATION

2

and its other members that are the direct result of a long-developed personal animosity between neighbors that pre-dated any claim of disability on the part of Mr. Chesler. While the plethora of accusations and personal animosities in the Complaint regarding the governance of this small condominium association may, if true, warrant involvement of a state court under state law, these petty squabbles are clearly not contemplated by the Fair Housing Act-which was intended to prevent invidious discrimination against and exclusion of protected classes in the acquisition of housing-and have no business burdening this federal court. *South-Suburban Housing Center v. Greater South Suburban Bd. of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991); *Halprin v. The Prairie Single Family Homes of Dearborn Park Assoc.*, 388 F.3d 327, 329 (7th Cir. 2004); *Bronk v. Ineichen*, 54 F.3d 425, 428-29 (7th Cir. 1995). Accordingly, and as set forth below, Counts I and II of the Complaint, which allege violations of the Fair Housing Act, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Once these claims are dismissed, this Court should decline to exercise supplemental jurisdiction over the remainder of plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## ARGUMENT

**I.      The Internal and Personal Squabbles Between Neighbors Alleged In Count I Do Not State A Claim For Failure To Provide A Reasonable Accommodation Under The Fair Housing Act**

Count I alleges defendants violated the Fair Housing Act by refusing to "make reasonable accommodations in the practices and services of the Association" which resulted in the denial of plaintiff Mr. Chesler the "equal opportunity to use and enjoy" the common elements of the building. Complaint at ¶ 102. Citing the language of the Fair Housing Act along with vague allegations of a disability, however, do not transform garden-variety disputes over

condominium governance into a claim under the FHA for failure to provide reasonable accommodations.

Section 3604(f)(2) of the FHA prohibits "discriminat[ion] against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection with such dwelling, because of a handicap...." 42 U.S.C. § 3604(f)(2). "Discrimination" under Section 3604(f) includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 2604(f)(3)(B); *Jankowski Lee & Assoc. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996).

In Count I, plaintiffs compile a list of actions or inactions which they attribute to the ASSOCIATION, the CONROYS, or MR. ANSEL, the cessation or execution of which they allege is a "reasonable accommodation" required by Section 3604(f)(3)(B). Complaint at Ct. I ¶¶ 102. Thus, plaintiffs allege defendants are required by the FHA to make the following alleged "reasonable accommodations":

-    Ceasing to hose down the steps and walkway leading up to the building's front entrance (Complaint at Ct. I ¶¶ 85-87);

-    Ceasing removal of the dry mats located at the building's front entrance (*Id.* at Ct. I ¶ 88);

-    Monitoring and remedying ice buildup and poor lighting conditions in the back stairwell (*Id.* at Ct. I ¶¶ 90-91; 94-95);

-    Repairing the buzzer on the intercom system (*Id.* at Ct. I ¶¶ 92-93);

-    Ensuring the sidewalk is clear from snow (*Id.* at Ct. I ¶¶ 97); and

-    Relocating the trash canisters near the rear walkway so that they do not block the utility meters and make it more difficult for Mr. Chesler to access the building from his rear parking spot (*Id.* at Ct. I ¶¶ 98-99)

4

Failure to provide these accommodations, plaintiffs insist, has denied Mr. Chesler an "equal opportunity to use and enjoy the property and common elements." *Id.* at Ct. I ¶ 19.

Count I fails as a matter of law on a number of levels. Primarily, however, this Count must be dismissed because it is an attempt to shoehorn a dispute among neighbors involving various condominium association issues into a discrimination claim under the FHA via the reasonable accommodation provision in Section 3604(f)(3)(B). The Seventh Circuit has pronounced that the FHA was designed to prevent the widespread practice of refusing to sell or rent homes in desirable residential areas to members of protected groups. *Halprin*, 388 F.3d at 329. It was not intended to solve problems that may accrue as a result of soured relations between neighbors. *Id.* Otherwise, the court has noted, "quarrels between neighbors [would] become a routine basis for federal litigation." *Id.*

A complete reading of the Complaint, assuming its allegations to be true, reveals that these are the exact circumstances present here. As plaintiffs concede, the "openly hostile" environment and the alleged "affirmative acts of malice" purportedly stemmed from plaintiffs' objections to the CONROYS' alleged "unilateral alterations" to the building and the so-called "Conroy/Ansel-Controlled Board's" conduct with respect to ASSOCIATION business and expenditures, all of which purportedly began when MR. CONROY and MR. ANSEL were elected to the ASSOCIATION Board in January of 2006, five months before Mr. Chesler's surgery. Complaint at ¶¶ 16-25.

It is clear from a reading of the Complaint as a whole that the disputes at issue do not derive from or even approach a nexus with Mr. Chesler's alleged disability. Plaintiffs' complaints regarding the time it has taken for the intercom buzzer to be fixed or to replace the

5

burned-out lightbulbs in the back stairwell smack less of earnest requests for reasonable accommodations as they do agitated bickering over the day-to-day operations of the ASSOCIATION. This is supported by the obvious personal animosity between the parties as demonstrated by the altercations alleged throughout the Complaint.

The same can be said for the nebulous allegations pertaining to the ASSOCIATION's "fail[ure] to maintain a clean and dry environment." Complaint at Ct. I ¶¶ 86, 89. These are clearly not the kind of reasonable accommodations litigated under the FHA in this Circuit. *See, e.g., Wilstein v. San Tropai Condo. Master Assoc.*, No. 98 C 6211, 1999 WL 262145 (April 22, 1999 N.D. Ill.) (request for a more accessible parking space near 300 unit condominium complex); *Jankowski*, 91 F3d 891 (same); *Michael v. Caprice*, No. 99 C 2313, 1999 WL 688733 (June 11, 1999 N.D. Ill.) (request for special use of wheelchair-accessible elevator); *Bronk*, 54 F.3d 425 (deaf tenants' request for change in pet policy to accommodate "hearing" dog).

Furthermore, the accommodations requested are too far attenuated from Mr. Chesler's alleged disability to satisfy the "necessity" requirement mandated by the FHA as a matter of law. 42 U.S.C. § 3604(f)(3)(B) (the reasonable accommodation must be "necessary to afford such person equal opportunity to use and enjoy a dwelling); *Bronk* at 429. To state a claim under Section 3604(f)(3)(B), plaintiffs must sufficiently allege that the desired accommodation "will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *See id.* In this case, an injunction requiring the ASSOCIATION to repair the defective intercom buzzer which affects all residents (and which has already been undertaken) will not ameliorate the effects of Mr. Chesler's alleged disability, which apparently does not interfere with his daily ascending and descending of the flights of steps necessary to reach his

third floor unit of a building with no elevator.  Plaintiffs' conclusory allegations that these conditions are especially hazardous to Mr. Chesler because of his "impaired physical condition" do not meet even the notice pleading standard under the Federal Rules where the relationship between Mr. Chesler's exact disability and the accommodation are so unclear.  *See Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) ("The 'equal opportunity' element limits the accommodation duty so that not every rule that creates a general inconvenience or expense to the disabled needs to be modified.  Instead, the statute requires only accommodations necessary to ameliorate the effect of plaintiff's disability so that she may compete equally with the non-disabled in the housing market").

Finally, plaintiffs insufficiently allege Mr. Chesler's "handicap."  "Handicap" is defined under the FHA as "a physical or mental impairment which substantially limits one or more of such person's major life activities."  42 U.S.C. § 3602(h)(1).  According to the Office of the Secretary of Housing and Urban Development, which is granted authority to promulgate regulations to carry out the FHA,[1] "major life activities" include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 24 C.F.R. § 100.201. These provisions are intended to "'end the unnecessary exclusion of persons with handicaps from the American mainstream.'"  *Bronk*, 54 F.3d at 428 (quoting the House Report on the FHA).

Plaintiffs conclude that Mr. Chesler "suffers from a physical impairment which substantially limits one or more of his life activities" and "is regarded as having a physical impairment" under the FHA.  Complaint at Ct. I ¶¶ 81-82.  Notwithstanding, these bald legal

---

[1] 42 U.S.C. § 3535(d).

conclusions are negated by other specific allegations in the Complaint that cast serious doubt on the reasonableness of the requested accommodations vis-a-vis Mr. Chesler's actual physical condition. Again, it is fatally inconsistent for plaintiffs to assert that the Fair Housing Act entitles them to an injunction precluding the ASSOCIATION from merely cleaning its front steps, doing a better job of snow removal, and other such actions posing-at most- temporary and minor obstructions when Mr. Chesler apparently has no problem whatsoever ascending and descending the three flights of steps to his third floor unit of an elevator-less building on a daily basis. Accordingly, Mr. Chesler's putative limitations on mobility do not mesh with the desired accommodations plaintiffs claim are required under the FHA.

This is not to say that plaintiffs' claims are foreclosed from all judicial review; they simply have failed to state a claim under the FHA. Plaintiffs' allegations of condominium board malfeasance are a much better fit with plaintiffs' state law claims. The relief sought for the alleged abuse of discretion with regard to the ASSOCIATION's expenditures, defendants' alleged failure to replace burned out light bulbs, and the alleged intentional "acts of malice" such as the hosing off of the front walkway are better evaluated in plaintiffs' counts claiming breach of fiduciary duty, negligence, and intentional infliction of emotional distress, respectively. Thus, in order to ensure that "all quarrels between neighbors [do] not become a routine basis for federal litigation," Count I of plaintiffs' Complaint properly should be dismissed as a matter of law.

II.     **Count II Fails As A Matter Of Law Because Plaintiffs' Alleged Hostile Housing Environment Is Not The Product Of Invidious Discrimination And Does Not Come Close To The Severity Or Pervasiveness Required To State A Claim Under the Fair Housing Act**

Count II of plaintiffs' Complaint also must be dismissed because even if the environment alleged in the Complaint exists, it is neither motivated by animus related to Mr. Chesler's alleged handicap nor severe enough to state a claim under the Fair Housing Act. Count II realleges the entire history of neighbor conflict and claims a "pattern of harassment" which the ASSOCIATION, the CONROYS, and MR. ANSEL have purportedly "created, fostered and ratified." Complaint at Ct. II ¶¶ 103-105. The harassment has allegedly created a "hostile housing environment" which has "successfully interfered with the Cheslers' fair and equal use and enjoyment" of the building. Complaint at Ct. II ¶¶ 105-106. The Seventh Circuit recognizes a cause of action under the FHA for creating a hostile housing environment.[2] *DiCenso v. Cisneros*, 96 F.3d 1004, 1006, 1008 (7th Cir. 1996). Because these are such rare claims, however, the Seventh Circuit borrows from the more familiar standards developed in employment discrimination cases under Title VII. *DiCenso*, 96 F.3d at 1008; *Krieman v. Crystal Lake Apartments Limited Partnership*, No. 05 C 0348, 2006 WL 1519320, *11 (May 31, 2006 N.D. Ill.).

To state a hostile living environment claim, plaintiffs must plead sufficiently that: (1) they are members of a protected class; (2) they were subject to unwelcome harassment; (3) the harassment was based on the protected status; (4) the harassment was sufficiently severe or

---

[2] The Seventh Circuit has not, however, specifically recognized a hostile housing or working environment claim based on disability. *Silk v. City of Chicago*, 194 F.3d 788, 803-04 (7th Cir. 1999) (*assuming* such a claim exists under the ADA); *Davis-Durnil v. Village of Carpentersville, IL*, 128 F. Supp. 2d 575, 583 (N.D. Ill. 2001).

pervasive to deprive them of their right to enjoy their home; and (5) defendants knew or should have known of the harassment in question and failed to take prompt remedial action.  *Krieman*, 2006 WL 1519329 at *11.   As set forth above, defendants challenge that plaintiffs have sufficiently alleged that Mr. Chesler is a member of a protected class as defined in the FHA, particularly given that the alleged acts of wrongdoing, at least in part, predated any claim of harassment.  Even assuming Mr. Chesler is a member of a protected class, however, Count II must fail because (1) plaintiffs have not alleged that the purported harassment was based on this protected status, and (2) the allegations of harassment in Count II fall far short of the severity and pervasiveness required to state a claim under the FHA for creation of a hostile living environment as a matter of law.

Count II fails as matter of law in the first instance because the allegations in the Complaint make clear that any purported harassment on the part of defendants was not *because of* Mr. Chesler's alleged disability.  *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975-76 (7th Cir. 2004) (the alleged discrimination must be based on sex in order to prevail on a claim for hostile work environment) ; *Hildebrandt v. Ill. Dept. of Human Resources*, 347 F.3d 1014, 1034 (7th Cir. 2003) ("[T]he harassment must have occurred because of the sex of the complainant....") *Saladino v. Envirovac*, No. 02 C 50323, 2004 WL 2309180, *6 (Oct. 12, 2004 N.D. Ill.) (same);  *cf. Scialabba v. Sierra Blanca Condo. Number One Assoc.*, No. 00 C 5344, 2000 WL 1889664 (Dec. 27, 2000 N.D. Ill.).  Rather, as evident from the Complaint, any hostile environment that exists evolved from bitter disagreements between neighbors over condominium association governance.  Hostile environments created or condoned by motivations other than animus toward a protected class, however, are simply not actionable as civil rights violations.

*Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808-09(7th Cir. 2001) (in the context of a Title VII claim for sex discrimination) (citing cases).

The Complaint is devoid of specific allegations that any of the defendants' purported conduct was motivated by animus toward Mr. Chesler's alleged disability. To the contrary, even a generous reading of the Complaint makes obvious that any of the purported harassment allegedly "created, fostered and ratified" by defendants is a direct result of disputes over the governance of the ASSOCIATION and subsequent related and escalated altercations between the neighbors. In that regard, plaintiffs allege that "[f]rom January 2006 forward, Richard Conroy and Frank Ansel effectively have excluded the Cheslers from the business and operations of the Association" to which the Cheslers "repeatedly objected" and that "[a]fter the Cheslers objected to the Conroy's unilateral alterations of the Condo Property common areas, Ana Conroy also became openly hostile to the Cheslers and began to engage in affirmative acts of malice against the Cheslers." Complaint at ¶¶ 17-25. The surgery which purportedly rendered Mr. Chesler "physically impaired" under the FHA did not occur until May of 2006. *Id.* at ¶ 27.

Furthermore, several of the complained-of acts – for example failure to call ASSOCIATION meetings, failure to relinquish control of the ASSOCIATION checkbook, and failure to prevent "ice-damming" of the buildings gutters – have no conceivable connection to any disability and preclude any presumption that the alleged personal animosity toward the Cheslers is based on a protected status. Indeed, one of the more serious allegations lodged against defendants-the alleged assault of Ms. Chesler by MS. CONROY-did not even involve the allegedly handicapped Mr. Chesler at all; it involved the undisputedly non-handicap Ms. Chesler alone. Taken into context with the remainder of the allegations throughout the Complaint,

11

plaintiffs' failure to specifically allege defendants' acts were motivated by animus towards Mr.
Chesler because of his alleged ensuing disability renders Count II facially deficient as a matter of
law.

Plaintiffs also fail to sufficiently allege facts to satisfy the fourth prong of the hostile
housing environment test: that the alleged harassment must be sufficiently severe or pervasive.
*Krieman*, 2006 WL 1519329 at *11.  Again borrowing from more frequently litigated Title VII
claims, the Seventh Circuit has determined "[i]solated" and "innocuous" incidents do not support
a finding of discrimination in a hostile housing claim.  *DiCenso*, 96 F.3d at 1008 (citing cases).
Conduct that is insufficiently "'severe'" or "'pervasive'" and does not objectively create a
hostile living environment is beyond  the scope of the Fair Housing Act.  *Id*. (quoting *Harris v.
Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) and analogizing to the housing environment
context).  As such, for conduct to be actionable, it must be "'extreme and not merely rude or
unpleasant.'"  *Kreiman*, 2006 WL 1519329 at *12 (citations omitted).  In evaluating whether an
environment is sufficiently hostile, courts consider the frequency of the discriminatory conduct,
its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and
whether it unreasonably interferes with the use and enjoyment of the premises.  *DiCenso*, 96
F.3d at 1008.

When evaluated next to the cases in this Circuit addressing hostile housing environments,
the conditions of which plaintiffs complain do not rise to the level of a hostile housing
environment as a matter of law.  *See, e.g., DiCenso*, 96 F.3d 1004 (landlord's proposition to
married tenant for sex in lieu of rent did not constitute hostile housing environment); *Kreiman*,
2006 WL 1519329 (repeated derogatory comments such as "nigger" and "biracial boy"

combined with attempted evictions and delay in repairing water heater, air conditioning, and telephone did not constitute hostile housing environment); *Sciaballa v. Sierra Blanca Condo. Number One Ass'n*, No. 00 C 5344, 2000 WL 1889664 (Dec. 27, 2000 N.D. Ill.) (proposition by condominium association's president at board meeting to "get rid of" teenager suffering from quadri paresis, impaired coordination, mild cognitive defects, organic personality disorder and truncal ataxia combined with filing of multiple unwarranted liens against his family stated a claim for hostile housing environment). Here, plaintiffs' list of alleged inconveniences as relate to their FHA claims – hosed-down walkways; absence of dry mats at the front entrance; poor lighting conditions in the back stairwell; a period of intercom-buzzer malfunction; missing salt containers; and trash canisters that block the utility meters – simply do not fit the mold of a pervasive and severe hostile housing environment. Accordingly, plaintiffs do not state a claim under that theory of liability as a matter of law and Count II must be dismissed.

### III.    The Remaining State Law Claims Must Be Dismissed Pursuant to 28 U.S.C. § 1367(c)(3).

Once plaintiffs' putative federal question claims are dismissed, this court should decline to exercise supplemental jurisdiction over the remaining claims sounding in state law pursuant to 28 U.S.C. § 1367(c)(3). *Alonzi v. Budget Constr. Co.*, 55 F. 3d 331, 334 (7th Cir. 1995); *Wright v. Associated Insurance Cos.,*, 29 F. 3d 1244, 1252 (7th Cir. 1994).

### CONCLUSION

In sum, Counts I and II of plaintiffs' Complaint are defective as a matter of law. Both Counts attempt to bring a garden-variety condominium association dispute within the purview of the Fair Housing Act through the coincidence of Mr. Chesler's after-the-fact surgery. Both Counts, however, fail to allege facts sufficient to state a claim under that statute and, indeed, the

facts plead firmly establish its inapplicability. Because this Court is not the proper venue for resolution of these quarrels between neighbors, Counts I and II of the Complaint properly should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). This Court should decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

Respectfully submitted,

STELLATO & SCHWARTZ, LTD.

By: **/s/ Steven B. Borkan**
        Steven B. Borkan

By: **/s/ Diane Jane Silverberg**
        Diane Jane Silverberg

6193463 (SBB)
STELLATO & SCHWARTZ, LTD.
Attorneys for Defendants
120 N. La Salle Street,34th Floor
Chicago, Illinois  60602
(312) 419-1011

KOVITZ, SHIFRIN & NESBIT
Co-Counsel for Defendants
750 Lake Cook Road
Suite 350
Buffalo Grove, IL 60089
(847) 537-0500

6193463 (SBB)
6287296 (TPS)          SBB:kl          06/30/08          WHITE          17662-9-71

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **LAWRENCE CHESLER and** | ) | | |
| **JAQUELINE CHESLER,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **vs.** | ) | **No. 08 CV 2679** | |
| | ) | | |
| **RICHARD M. CONROY, ANA CONROY,** | ) | **Judge:** | **Virginia M. Kendall** |
| **FRANCIS C. ANSEL, III and 1327 DEARBORN** | ) | **Magistrate:** | **Jeffrey Cole** |
| **CONDOMINIUM ASSOCIATION, INC.,** | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

**<u>NOTICE OF FILING</u>**

To:     Mr. Thomas G. Griffin
        Mr. Troy M. Sphar
        Griffin Law Offices, LLC
        656 West Randolph Street, Suite 500W
        Chicago, Illinois 60661

        Mr. Richard Warren Hillsberg
        Ms. Diane Jane Silverberg
        Mr. Michael G Kreibich
        Ms. Pamela J. Park
        Kovitz, Shifrin & Nesbit
        750 Lake Cook Road
        Suite 350
        Buffalo Grove, IL 60089

        YOU ARE HEREBY NOTIFIED that on June 30, 2008, there was filed with the Clerk of the
United States District Court, Northern District of Illinois, Memorandum in Support of Defendants'
Motion to Dismiss, a copy of which is attached hereto.


                                         **/s/ Stellato & Schwartz, Ltd.**
                                         STELLATO & SCHWARTZ, LTD.

6193463 (SBB)
6287296 (TPS)
STELLATO & SCHWARTZ, LTD.
Attorneys for Defendants
120 North La Salle Street, 34th Floor
Chicago, Illinois 60602
(312) 419-1011

      I certify that I served this Notice by electronically mailing a copy to each person to whom it is directed at the address above indicated by using the CM/ECF system on June 30, 2008.


                **/s/ Steven B. Borkan**
                Steven B. Borkan