UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE CHESLER and <br> JACQUELINE CHESLER, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | Case No. 08 CV 2679 |
| RICHARD M. CONROY, ANA CONROY <br> FRANCIS C. ANSEL III, and 1327 <br> DEARBORN CONDOMINIUM <br> ASSOCIATION, INC., | ) <br> ) <br> ) <br> ) <br> ) <br> ) | The Honorable Virginia M. Kendall <br><br> Magistrate Jeffery Cole <br><br> **JURY TRIAL DEMANDED** |
| Defendants | ) | |

**MOTION FOR CLARIFICATION OF AUGUST 01, 2008 ORDER**

Lawrence and Jacqueline Chesler, by and through their attorneys, GRIFFIN LAW OFFICES, LLC, in support of their Motion for Clarification of the August 01, 2008 Order (relating to directions given to counsel at a Settlement Conference on August 01, 2008), state as follows:

1. On August 01, 2008 the parties met with the Court to participate in a Settlement Conference.

2. At the conclusion of that Settlement Conference, Plaintiffs understood that, while the current settlement discussions continued, the Court intended to stay all activity in the case with the exception of limited discovery into insurance and damages. Plaintiffs' counsel understood that this would stay briefing on Defendants' pending Motion to Dismiss.

3. The Court entered an Order on August 01, 2008 incorporating by reference the Court's directions at the Settlement Conference and allowing only limited discovery on

insurance and damages issues. A true and accurate copy of the August 01, 2008 Order is attached hereto as Exhibit A.

4. On August 15, 2008, Defendants' counsel Steven Borkan sent an email inquiring why Plaintiffs failed to file a response to the Motion to Dismiss, which Mr. Borkan stated was due on August 14, 2008.

5. In his email response, Plaintiffs' counsel stated that it was Plaintiffs' understanding that the Court was staying everything except discovery into insurance issues, and invited Mr. Borkan to jointly telephone the Court to clarify the Court's order if Defendants disagreed.

6. In his reply, Mr. Borkan stated that Plaintiff's understanding of what was discussed at the settlement conference was "strained at best," but declined the invitation to jointly call the Court. A copy of the email string between counsel with respect to this issue is attached hereto as Exhibit B.

7. Plaintiffs' counsel independently contacted the Court's courtroom deputy, but the deputy was unable to clarify whether briefing on the Motion to Dismiss was stayed by the Court's August 1, 2008 Order.

WHEREFORE, Plaintiffs Larry and Jackie Chesler respectfully request that this Court clarify its instructions given at the August 01, 2008 Settlement Conference, specifically outlining the parameters of the stay and whether the briefing schedule on the Motion to Dismiss is stayed until further order of the Court.

DATE: August 19, 2008                    LAWRENCE CHESLER and
                                         JACQUELINE CHESLER, Plaintiffs,


                                         /s/ Troy M. Sphar
                                         By one of their Attorneys

Thomas G. Griffin (ARDC # 6202401)
Troy M. Sphar (ARDC # 6278497)
GRIFFIN LAW OFFICES, LLC
656 West Randolph Street, Suite 500W
Chicago, Illinois 60661
(312) 648-1700

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1
### Eastern Division

Lawrence Chesler, et al.
                Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　Case No.: 1:08−cv−02679
　　　　　　　　　　　　　　　　　　　　　　Honorable Virginia M. Kendall

Richard M. Conroy, et al.
                Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, August 1, 2008:

      MINUTE entry before the Honorable Virginia M. Kendall:Settlement conference held and continued to 9/26/2008 at 10:00 AM. Defendants are granted leave to engage in limited discovery on the issue of insurance coverage as outlined at the settlement conference.Advised in open court (jms, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**EXHIBIT B**

**From:** Steven Borkan [SBorkan@stellatoschwartz.com]
**Sent:** Saturday, August 16, 2008 8:24 AM
**To:** tgriffin@glochicago.com
**Cc:** Timothy P. Scahill; Diane J. Silverberg; mkreibich@ksnlaw.com; tsphar@glochicago.com
**Subject:** Settlement Conference Follow-Up

Tom,

There is no need to call the court, nor is the need for us to argue over what is contained within the language of the various insurance policies. Your interpretation of what was discussed with respect to this issue is strained at best. What was discussed was the lack of substantiation for plaintiffs' damages claims and the need for limited discovery on defendants' behalf to obtain that information. You may recall that is what was requested over two weeks ago in my email of Aug 3. To date you have neither provided the information, nor have you provided a viable excuse for the delay.

Each issue in plaintiffs' demand letter has been addressed. Requests have been made for responses to the inquiries and proposals submitted. In certain instances, counter-proposals have been requested. To date, no responses/counter-proposals have been received. Instead of phone calls for clarification, please provide the responses to inquiries that have now gone unanswered for the better part of two weeks. Your attention to these matters would be most appreciated.

Steve

---

**From:** Thomas G. Griffin [mailto:tgriffin@glochicago.com]
**Sent:** Friday, August 15, 2008 10:26 PM
**To:** Steven Borkan
**Cc:** Timothy P. Scahill; 'Diane J. Silverberg'; mkreibich@ksnlaw.com; 'Troy M. Sphar'
**Subject:** RE: Gutter Quotes

Steve –

Perhaps I misunderstood how we agreed to proceed at the conclusion of our settlement conference. I understood that we all agreed to pursue a settlement based on the guidance given by the Judge at the settlement conference. If that is not the case, please let me know, so we can inform the Court and request more explicit directions.

With respect to the response to the motion to dismiss, I understood the Judge to say that she was staying everything except discovery into insurance issues (which would stay the briefing on the motion to dismiss, but provide for your provision of the policies). Her 8/4/08 Order incorporated what was discussed at the settlement conference, and allowed only for Defendants "to engage in limited discovery on the issue of insurance coverage as outlined at the settlement conference." Did you hear her say something different, or do you have a different interpretation of what she said? We should jointly call the Judge's chambers on Monday to request clarification.

I also don't understand why you are refusing to provide the insurance policies. If we are pursuing settlement within the bounds of the coverage, I don't think it is getting ahead of ourselves to request copies of the policies. You stated in your prior email that the unit owners had to fund the gutter repairs, and suggest above that the Cheslers may be solely responsible for the roof repairs. I responded that I thought at least the roof repairs are covered under the insurance policies (for the same reason the

damage to the interior of the Cheslers' unit is covered under the Association policy), and that the gutter repairs may also be covered. It seems to me that we need to review the policies and the treatment of past claims for damage from ice damming to resolve this issue. It also seems to me that the Cheslers, as unit owners, are entitled to at least the Association policies wholly independent of any discovery in this litigation. Finally, if neither the Association nor its insurance carrier are going to pay for the roof repairs, the Cheslers don't have to get anyone's consent to their choice of roofer to make the repairs. So it seems we have to resolve these issues now.

Let me know your thoughts on the above. I will give you a call Monday morning so we can put a call into the Judge's chambers for further clarification on the scope of her stay.

Have a great weekend.

Tom
Thomas G. Griffin
Griffin Law Offices, LLC
656 W. Randolph Street, Suite 500W
Chicago, IL 60661
T: (312) 648-1700 x11
F: (312) 648-1730
E: tgriffin@glochicago.com

**From:** Steven Borkan [mailto:SBorkan@stellatoschwartz.com]
**Sent:** Friday, August 15, 2008 6:00 PM
**To:** tgriffin@glochicago.com
**Cc:** Timothy P. Scahill; Diane J. Silverberg; mkreibich@ksnlaw.com; Troy M. Sphar
**Subject:** RE: Gutter Quotes

Tom,

I am waiting to receive the response from my subpoena with respect to the damages as a result of the water leaking through the Chesler's roof. I am hoping to see what the investigation may have revealed in that regard as far as what damage to the roof there may be, and what was the cause of that damage. As you know, if the roof repair necessary was not caused by any common element issue (i.e., the gutters) then the cost must be borne by the Cheslers alone and not the association. Moreover, I do not understand how the contractor from Reliable could have missed this significant difference. On that issue, I will have the quote from Lindholm sent to Reliable and ask for an explanation. Ultimately, the necessary repairs to whatever is damaged should be made at the same time. Deciding exactly who is going to pay for these repairs may be a tad more difficult.

With respect to your inquiry/request for insurance information, let's not get ahead of ourselves. In the event it becomes necessary, I will certainly provide all the requisite discovery in this case, including insurance policies, etc. As for prior claims of damage as a result of ice damming, I do not believe I have any such information. You will need to provide something more so that in the event it becomes an issue, I can make the appropriate inquiry: Who made the claim, when was it made, was it submitted to an insurance agent or directly to an insurer, etc. However, we are once again getting ahead of ourselves.

Where are we on the other requests for information/documents? I would hope I do not need to reiterate my prior emails herein. Just let me know. Thanks.

Steve

P.S. I note you did not file a response to the motion to dismiss - it was due yesterday, the 14th.

8/19/2008

**From:** Thomas G. Griffin [mailto:tgriffin@glochicago.com]
**Sent:** Friday, August 15, 2008 5:12 PM
**To:** Steven Borkan
**Cc:** Timothy P. Scahill; 'Diane J. Silverberg'; mkreibich@ksnlaw.com; Troy M. Sphar
**Subject:** RE: Gutter Quotes

Steve –

I reviewed the three quotes you sent me with the Cheslers, and inquired to Lindholm Roofing about the big disparity in the Lindholm quote given to the Cheslers. After speaking to a representative at Lindholm, I determined that the Lindholm Roofing quote I forwarded to you last month (another copy of which is attached) includes repairs of the damage to the roof caused by the ice damming (item no. 3, "we will roof over gutter flange after installation with the modified bitumen roof system). I understand that the damage extends back several feet from the end of the roof, and that the Lindholm quote contemplates re-roofing a 4 to 5 ft strip along the entire gutter edge of the roof. The three gutter quotes you sent (including another Lindholm quote for gutters only) do not include any roof repairs. Thus, trying to compare these quotes would be comparing "apples with oranges."

My recollection from the settlement conference was that the Judge specifically stated her opinion for purposes of settlement (without deciding the issue as a legal matter) that the Association was responsible for both the gutter replacements and for repairing the damage to the roof caused by the ice damming in the gutters. Please let me know if you disagree with that recollection. Either way, it seems to make sense to do both the roof repairs and the gutter replacements at the same time. Please let me know if you disagree.

Also, I believe the damage to the roof may be covered by the Association's property insurance. I am not sure whether the gutter replacements themselves (because the gutters also were damaged by the ice damming) is covered. You told me back in June that you would get me copies of the various insurance policies when you finished working through the coverage issues. Can you get them to me now? I understand that claims were made in the past for damage caused by ice damming. Can you get me that documentation as well?

If the roof damage repairs are insured but the gutter replacements are not, it may make sense to cost out the two components of this work separately. Please let me know whether I should request a breakout of the costs from Lindholm.

Regards,

Tom
Thomas G. Griffin
Griffin Law Offices, LLC
656 W. Randolph Street, Suite 500W
Chicago, IL 60661
T: (312) 648-1700 x11
F: (312) 648-1730
E: tgriffin@glochicago.com


Let

**From:** Steven Borkan [mailto:SBorkan@stellatoschwartz.com]
**Sent:** Monday, August 11, 2008 3:27 PM

8/19/2008

**To:** tgriffin@glochicago.com
**Subject:**

Tom,

Attached please find three quotes for the necessary replacement of the gutters at 1327 Dearborn. As you may recall, Mr. Chesler was present during the Reliable America inspection of the roof conducted on Thursday, August 7. While there is a less expensive quote, the proposal from Reliable provides the assurance that the necessary work was addressed insofar as Mr. Chesler was present and met with the contractor. Please let me know whether this proposal is acceptable to the Cheslers. If so, the matter can be taken up with the Petersons and assuming they are in agreement as well, and after submission of the requisite funds from each unit, the work can be undertaken. As time is of the essence, please let me know as soon as possible.

There is also another third-party intermediary that would be willing to undertake the job of go-between. He is a building engineer who works in the neighborhood. He would be taking this on as a side job and would not want any contact (direct or otherwise) with his regular employer. I trust these terms are acceptable. His fee is $30/hour. His name is Craig and he can be contacted directly via cell phone at 312/714-7752.

I look forward to hearing from you.

Steve

*Steven B. Borkan*
*Stellato & Schwartz, Ltd.*
*120 North LaSalle Street*
*34th Floor*
*Chicago, Illinois 60602*

This electronic mail and any attachments are PRIVILEGED and CONFIDENTIAL and may be protected by the ATTORNEY-CLIENT PRIVILEGE. It is intended solely for the use of the addressee identified above. If you are not the intended recipient, any use, disclosure, copying, or distribution of this electronic mail is UNAUTHORIZED. If you have received this electronic mail in error, please notify the sender immediately by calling (312) 419.1011 and delete it from your computer. Thank You.

## CERTIFICATE OF SERVICE

      Troy M. Sphar, an attorney, hereby certifies that he caused a copy of the foregoing Motion for Extension of Time to be served on August 19, 2008 via the ECF electronic filing system upon the following:

Steven Borkan
Timothy Scahill
STELLATO & SCHWARTZ, LTD.
120 N. LaSalle Street, 35th Floor
Chicago, Illinois 60602

Richard Hillsberg
Diane Silverberg
Pamela Park
Michael Kreibich
LAW OFFICES OF KOVITZ SHIFRIN & NESBIT, PC
750 West Lake Cook Road, Suite 350
Buffalo Grove, Illinois 60089

                                                     /s/ Troy M. Sphar
                                                   Troy M. Sphar