IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE CHESLER and JACQUELINE CHESLER, <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD M. CONROY, ANA CONROY, FRANCIS C. ANSEL, III and 1327 DEARBORN CONDOMINIUM ASSOCIATION, INC., <br><br> Defendants. | Case No. 08 C 2679 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Lawrence Chesler and Jacqueline Chesler (collectively, "the Cheslers") filed suit against their neighbors, Defendants Richard Conroy, Ana Conroy (collectively, "the Conroys"), Francis C. Ansel, III ("Ansel"), and their condominium association, 1327 Dearborn Condominium Association, Inc. (the "Association") (collectively, "Defendants"). Counts I and II of Complaint alleged violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, while the remaining counts alleged violations of various Illinois state laws. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants moved to dismiss Counts I and II of the Complaint. For the reasons stated, Defendants' motion to dismiss Counts I and II of the Complaint is granted. Moreover, pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over the Cheslers' state law claims.

## STATEMENT OF FACTS

This lawsuit arose from various heated personal disputes between neighbors living within the same three-unit building. The three-story 1327 Dearborn building includes three condominium units: the Cheslers live in the unit on the top floor, Ansel lives on the second floor, and the Conroys live on the first floor. The Association consists solely of the residents of the building. In January 2006, following a contentious election between the three neighbors, Richard Conroy became president of the Association and Ansel became Treasurer of the Association. The Cheslers, feeling exiled from the operations of the Association, objected to various Association expenditures for the small common areas of the building. After the Cheslers objected to the Association's expenditures, they allege that the Conroys became openly hostile towards them.

In May 2006, Lawrence Chesler underwent a spinal surgery. During his recovery period, Jaqueline Chesler informed the Conroys of her husband's surgery and asked that they maintain a clean and dry environment in the building's common areas (essentially the front walk and front hallway) so that her husband could safely maneuver throughout the building. The Cheslers allege that the Conroys responded by:

- Hosing down the front steps twice daily;
- Removing a rug that the Cheslers placed over the wet steps;
- Threatening to turn off the electricity to the entire building;
- Hiding and throwing away the Cheslers' mail;
- Hiding and removing salt containers use to melt ice on Association walkways;
- Directing the snow removal service to shovel snow into the Chesler's parking spot;
- Harassing the Cheslers' guests;

- Directing the Association's cleaning and maintenance staff to not reply to maintenance requests from the Cheslers;
- 
- Having the Cheslers' guests' cars towed;
- Placing garbage canisters behind the cars of the Cheslers' guests;
- Depositing a small pile of dirt on the backdoor to the Cheslers' unit;
- Refusing to repair the building's broken buzzer and intercom system, which forced Lawrence Chesler to descend three flights of stairs when guests arrived.

The Cheslers raised these grievances with the Association, which failed to remedy the deteriorating situation between the feuding neighbors. The Cheslers then decided to make a federal case out of their neighbor spat and filed suit alleging that their neighbors and the Association violated the FHA. Specifically, in Count I of their Complaint, the Cheslers allege that Defendants' actions constitute discrimination under 42 U.S.C. § 3604(f)(3)(B), and in Count II, they allege the Defendants' actions created a hostile housing environment in violation of the FHA.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to

3

relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

With respect to Count I, the Cheslers allege that Defendants have discriminated against them because of Lawrence Chesler's disability. The FHA requires reasonable "accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [a disabled person] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The Seventh Circuit has noted that Congress intended the FHA's anti-discrimination provision to apply to land-use regulations:

> The legislative history of the Fair Housing Amendments Act explains: The Committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices. The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community.

*Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 n.4 (7th Cir. 2006) (*quoting* H.R. Rep. No. 100-711, at 24 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2185). The Seventh Circuit has also stated that the FHA "contains no hint either in its language or its legislative history of a concern with anything but *access* to housing. Behind the Act lay the widespread practice of refusing to sell or rent homes in desirable residential areas to members of minority groups." *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004) (emphasis in original). "[W]e do not want, and we do not think Congress wanted, to convert every quarrel among neighbors . . . into a federal case." *Id.* at 330. When Congress amended the FHA to prohibit discrimination against disabled persons, "Congress explicitly intended for the FHA [as amended] to apply to zoning ordinances and other laws that would restrict the placement of group homes."

4

*Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002). In this case, the Cheslers do not allege that zoning regulations or land-use restrictions restrict their use or enjoyment of their condominium. Rather, they allege that a simple dispute with their neighbors has resulted in lost use and enjoyment of their residence. Because the Cheslers do not allege the type of discrimination that Congress targeted when it passed and amended the FHA, the Cheslers have failed to state a claim under the FHA in Count I.

In Count II of their Complaint, the Cheslers allege that all Defendants created a hostile housing environment in violation of the FHA. The Seventh Circuit has instructed that with respect to hostile housing environment claims, "a determination of what constitutes a hostile environment in the housing context requires the same analysis courts have undertaken in the Title VII context." *DiCenso v. Cisneros*, 96 F.3d 1004, 1007 (7th Cir. 1996). Therefore, to show a hostile housing environment, plaintiffs must show: 1) they are members of a protected class; 2) they were subject to unwelcome harassment; 3) the harassment was based on the protected status; 4) the harassment was sufficiently severe or pervasive to deprive them of their right to enjoy their home; and 5) defendants knew or should have known of the harassment in question and failed to take prompt remedial action. *See Rennie v. Dalton*, 3 F.3d 1100, 1107 (7th Cir. 1993) (stating requirements for hostile environment claim under Title VII); *see also Krieman v. Crystal Lake Apartments Ltd. P'ship*, No. 05 C 0348, 2006 WL 1519320, at *11 (N.D. Ill. May 31, 2006) (Kendall, J.).

In this case, the Cheslers allege that Lawrence Chesler is handicapped within the meaning of the FHA. Accordingly, to state a claim for hostile housing environment, any discrimination that occurred must have been because of his handicapped status. However, the allegations in the Complaint show that the Conroys directed their hostility towards the Cheslers not because Lawrence

5

suffers from a handicap; rather, the allegations illustrate that the hostility stemmed from a personal dispute between the families over control of the Association. Once the Conroys assumed control of the Association, in January 2006, the Cheslers voiced their displeasure with how the Conroys operated the Association and spent its money. The Complaint alleges that Lawrence Chesler first became handicapped within the meaning of the FHA five months after this dispute arose, in May 2006, when he underwent spinal surgery.[1] By that time, based on the Cheslers' allegations, the feud between the Cheslers and the Conroys had been raging for approximately five months. Therefore, any hostility that the Cheslers experienced after May 2006 was not because of Lawrence Chesler's handicap; instead, based upon the allegations of the complaint, the hostility reflected the personal animosity that had percolated for months between the neighbors. Congress did not enact the FHA to create a federal cause of action when a quarreling neighbor happens to become handicapped after the onset of the quarrel. *See Halprin*, 388 F.3d at 329. Because the Cheslers do not allege that Defendants discriminated against them because of Lawrence Chesler's status as a handicapped person, they have failed to state a claim.

It is also worthy to note that the Court has engaged in extensive settlement discussions with the parties prior to reviewing this motion. In an effort to resolve the dispute prior to the parties expending too much money on this rather minor conflict, the Court aided the parties for two days in discussions. Although not considered for purposes of this motion to dismiss, the Court notes that

---

[1] Although the Complaint alleges that Lawrence Chesler had back problems as early as 2004, such allegations are not sufficient for the Court to conclude that he was "handicapped" under the FHA at that point. In order to be handicapped under the FHA, a person must have a physical or mental impairment which substantially limits one or more of the person's major life activities. *See* 42 U.S.C. § 3602. Lawrence Chesler does not allege that his back problems substantially limited a major life activity until after his surgery in May 2006, when his surgery rendered him "almost completely immobile," thereby substantially limiting him in the major life activity of moving. (Compl. ¶ 27).

during the entire dispute (and post-surgery), Mr. Chesler has resided on the third floor and has utilized a fourth floor roof-top garden. He has not required any type of motorized lift or other mechanical aid to help him reach his unit. Although he complained of the non-working intercom system as a detriment to his lifestyle due to the difficulty of having to walk down the stairs to answer the door, the parties have informed the Court during discussions that the intercom is now repaired thus making moot any allegation that the broken intercom served as a type of discrimination. Regardless, the Court analyzes the Complaint without this information in reaching its conclusion.

Under 28 U.S.C. § 1367(c)(3), because this Court has dismissed all causes of action arising under federal law, it now declines to exercise supplemental jurisdiction over the remaining causes of action arising under state law.

## **CONCLUSION AND ORDER**

Therefore, for the reasons stated, Defendants' motion to dismiss is granted. So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: October 8, 2008